IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MILTON PAUL SMITH, III                                                                                    PLAINTIFF

v.                                         Case No. 6:14-CV-06117

ARMTEC COUNTERMEASURES COMPANY,
d/b/a Esterline Defense Technologies                                                              DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant Armtec Countermeasures Company's ("Esterline") motion for summary judgment (Doc. 18), brief in support of its motion (Doc. 19), statement of facts in support of its motion (Doc. 20), and supporting documents. (Docs. 21-24). Plaintiff Milton Paul Smith, III filed a response in opposition to summary judgment (Doc. 27), a brief in support of his response (Doc. 28), and a document that Mr. Smith presented as a statement of facts in support of his response. (Doc. 29). Esterline submitted a reply to Mr. Smith's opposition (Doc. 31), and an additional supporting document. (Doc. 31). For the reasons stated herein, Esterline's motion for summary judgment will be granted.

**I.      Background**

Mr. Smith, a black male, was hired by Esterline on August 30, 2010, for the position of Senior Contracts Administrator at its office in Coachella, California. (Doc. 20, ¶ 3). In this role, Mr. Smith prepared proposals for contracts, and was responsible for submitting these proposals by their due dates. (*Id.*). In February 2012, Mr. Smith transferred to Esterline's East Camden, Arkansas facility ("ARO") and kept the same job title. (*Id.*, ¶ 6). While working at ARO, Mr.

1

Smith "dotted line" reported[1] to Jim Zolinsky since Mr. Zolinsky was located at ARO, but he continued to report to Earl Cornish. (*Id.*, ¶ 7). "Sometime in late 2011 [or] maybe early 2012," Mr. Zolinski spoke with Mr. Smith because he had concerns that Mr. Smith's business writing skills were not meeting expectations. (Doc. 21-1, p. 14 (Smith Dep. 68:2-13, Nov. 11, 2015)). On September 13, 2012, Mr. Zolinski addressed Mr. Smith with concerns about timeliness and accuracy in submitting documents to customers. (Doc. 21-1, p. 16 (70:2-14)). In February 2013, Mr. Smith failed to submit a proposal on time, and this error was discovered when a customer contacted Esterline and an IT worker searched Mr. Smith's computer, discovering that the proposal was saved as a draft but never actually sent. (Doc. 21-1, p. 18 (74:22- 25)). In August 2013, Mr. Smith both failed to send a quote to a customer, and also incorrectly quoted a price to a customer in an amount that was $565,095 lower than the correct number. (Doc. 20, ¶¶ 13-16).

On September 10, 2013, Mr. Zolinski, Mr. Cornish, and Human Resources Director Gail Stewart met with Mr. Smith and gave him a "Final Warning Improvement Plan." (Doc. 21-1, p. 26 (99:10-14)). At this meeting, it was made clear to Mr. Smith that he was not meeting Esterline's expectations, and he was informed that if he continued to have performance issues he would be terminated from his employment at Esterline. (Doc. 21-1, p. 7 (104:12-19)) ("[I]t was very clear to me that there were, this Final Warning said that there was something that I wasn't doing that if I continued to do it I wouldn't be there").

On September 13, 2013, Hill Air Force Base requested a bid proposal from Esterline. (Doc. 20, ¶ 21). Esterline "had to submit the bid by 4:00 p.m. Mountain Daylight Time." (Doc. 28, p. 11). It was Mr. Smith's responsibility to submit the bid proposal on time. (Doc. 21-1, p. 28

---

[1] Esterline seems to place importance on the distinction between reporting and "dotted line" reporting, yet they failed to include an explanation in their brief of why this distinction matters, or even what "dotted line" reporting means in the context of their business.

2

(110:16-18)). Mr. Smith submitted the bid proposal at 4:11pm Mountain Daylight Time.[2] On November 14, 2013, Esterline cited to Mr. Smith's late submission of the bid proposal after his final warning, and terminated Mr. Smith. (Doc. 21-1, p. 32 (155:19-24)).

## II. Legal Standard for Summary Judgment

When a party moves for summary judgment, it must establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson*, 477 U.S. at 248. "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001) (quotation omitted). Facts asserted by the nonmoving party "must be properly supported by the record," in which case those "facts and the

---

[2] Mr. Smith maintains that the bid "was actually submitted timely." (Doc. 28, p. 11). Mr. Smith acknowledges that he "had to submit the bid by 4:00 p.m. Mountain Daylight Time" but goes on to make further arguments on this point. (*Id.*) Esterline produced a statement from the Department of the Air Force, which quotes its rules for accepting bids, and clearly states that "it is the offeror's responsibility to ensure timely submission," and that the bid from Esterline was submitted at 4:11 p.m. when the bid was due at 4:00 p.m. (Doc. 32-1). Mr. Smith raises several arguments for why the bid shouldn't be considered late, or why the late submission was not his fault. Those arguments will be considered below where appropriate. However, in light of the statement from the Department of the Air Force, as a factual matter about the timeliness of the bid submission, the bid was technically submitted after the deadline and therefore the bid was late.

inferences to be drawn from them [are viewed] in the light most favorable to the nonmoving party." *Id*. at 656–57.

A plaintiff in an employment discrimination case survives a motion for summary judgment "either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination" using circumstantial evidence. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). When, as is the case here, a plaintiff presents no direct evidence to support a claim of discrimination, the claim is analyzed under the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first present a prima facie case of employment discrimination. *Ramlet v. E.F. Johnson Co.,* 507 F.3d 1149, 1153 (8th Cir. 2007). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.*; *McDonnell Douglas Corp.*, 411 U.S. at 802. The plaintiff must then demonstrate that the defendant's proffered reason is a pretext for unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993); *Miners v. Cargill Comms., Inc.*, 113 F.3d 820, 823 (8th Cir. 1997). To demonstrate pretext, the plaintiff must offer sufficient evidence for a reasonable trier of fact to infer discrimination. *Lors v. Dean,* 595 F.3d 831, 834 (8th Cir. 2010). However, "the evidence produced to show a prima facie case and the 'inferences drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.'" *Miners*, 113 F.3d at 823 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981). Although the burden of production shifts between the parties, the burden of persuasion remains on the plaintiff at all times. *Fatemi v. White*, 775 F.3d 1022, 1041 (8th Cir. 2015).

**III.     Analysis**

The Court will first address the shortcomings of the document that Mr. Smith submitted as a statement of facts, and then turn to the merits of Esterline's motion for summary judgment. Summary judgment is proper because Mr. Smith has failed to make out a prima facie case of race discrimination, and because even if Mr. Smith had done so, Esterline has asserted a legitimate nondiscriminatory reason for their employment action, and Mr. Smith has failed to identify circumstances that would permit a reasonable inference that Esterline's proffered reason was pretext for unlawful discrimination.

**A.     Procedural Errors that Warrant Summary Judgment**

Local Rule 56.1 requires that a party moving for summary judgment according to Rule 56 of the Federal Rules of Civil Procedure shall file "a short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried." The rule further requires that the opposing party shall file a "short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried." These statements must comply with Federal Rule of Civil Procedure 56(c), in that they must be supported by citation to the record. The Local Rule outlines the penalty for an opposing party failing to oppose facts in accordance with this rule, by requiring that facts "shall be deemed admitted unless controverted by the statement filed by the non-moving party." The effect of this Rule is that if the nonmoving party fails to controvert the facts asserted by the moving party, the Court may accept the movant's statement of undisputed facts as true. *Robinson v. American Red Cross*, 753 F.3d 749, 754–55 (8th Cir. 2014).

Esterline complied with the Rules. (Doc. 20). Mr. Smith did not. (Doc. 29). Mr. Smith submitted a list of fifteen questions and one statement. (*Id.*). Some of these questions pertain to the instant lawsuit, while some of them seem to raise tangential issues that are not material and

have not been within the scope of this lawsuit.  Mr. Smith's list of fifteen questions and one statement is not a "short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried" and the list does not comply with Federal Rule of Civil Procedure 56(c) or Local Rule 56.1.  As such, it would be proper for the Court to find Esterline's uncontested statement of undisputed facts as true, and enter summary judgment in favor of Esterline on this basis alone.  However, the Court declines to resolve Esterline's pending motion for counsel's failure to follow the rules, and proceeds to fully address the merits of the case.

### B. Mr. Smith's Prima Facie Case for Race Discrimination

To establish a prima facie case of unlawful race discrimination under Title VII, a plaintiff must show that: "(1) he is a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently."  *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007) (citations and quotations omitted).  In this case, the parties disagree about whether the second and fourth requirements of the *prima facie* case have been met.

Smith has failed to make a prima facie showing in this case because he has failed to meet the fourth requirement.  That is, he has failed to identify similarly situated employees outside the protected class who were treated differently so as to create an inference of unlawful discrimination.  To determine if the identified comparators are similarly situated, the test is "rigorous and requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing [himself] to the other employees."  *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).  The plaintiff "bears the burden to demonstrate by a preponderance of the evidence that there were individuals similarly situated."  *Gilmore v. AT&T*,

319 F.3d 1042, 1046 (8th Cir. 2003) (citing *Clark v. Runyon,* 218 F.3d 915, 918 (8th Cir. 2000)). A comparator "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id*. However, "[t]he similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone." *Doucette v. Morrison Cty., Minn.*, 763 F.3d 978, 984 (8th Cir. 2014), *citing Ridout v. JBS USA, LLC,* 716 F.3d 1079, 1085 (8th Cir. 2013) (quotations omitted). If plaintiff cannot identify adequate comparators then plaintiff failes to make out a prima facie case and summary judgment is proper for defendant. *See e.g., Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001) (affirming a district court's grant of summary judgment for defendant where plaintiff had failed to demonstrate that comparators had the same number of infractions or that the alleged infractions were of "comparable seriousness" and thus the comparators could not be relied on to make out the plaintiff's case).

    1.    **Tom Peek as a Comparator**

Mr. Smith suggests that Tom Peek is a comparator because he is a white employee on the same vertical level on Esterline's organizational chart who made the same error but was not fired. (Doc. 28, p. 4). Mr. Smith contends that the late bid for which he was ultimately terminated resulted in part because Mr. Peek failed to get Mr. Smith information that he needed to complete the bid. (Doc 27-3, p. 2). Reviewing Mr. Smith's own characterization of Mr. Peek's role in the organization and role in submitting the bid is instructive in determining whether Mr. Peek is a comparator. Mr. Smith worked in the contracting department, while Mr. Peek worked in the estimating department. (Doc. 21-1, p. 12 (44:14-21)). Mr. Smith described how the two departments worked together to prepare a bid as follows: "[Mr. Peek's] task is crunching numbers. That is not my task. My task is to get the information from him. If it's not getting to me, then

maybe going to management and saying, 'Hey what's going on here, or I need this, or I need that.'" (Doc. 21-1, p. 38 (190:2-6)). Because Mr. Smith was the person ultimately responsible for submitting the bid on time, to the extent that Mr. Peek made an error his error was submitting information late to Mr. Smith, while Mr. Smith's error was failing to manage the entire bid process and collect all of the information needed to ensure the timely submission of a bid. These facts show that the error allegedly made by Mr. Peek that did not result in his termination was different from the error made by Mr. Smith when he failed to submit the bid on time.

Mr. Peek and Mr. Smith appear to have shared a manager. While Mr. Smith directly reported to Earl Cornish and "dotted line" reported to Jim Zolinsky, Mr. Peek also directly reported to Earl Cornish but did not "dotted line" report to Jim Zolinsky. (*Id.*, p. 12, 46-47). Thus, it appears that both Mr. Smith and Mr. Peek reported to Earl Cornish in some capacity despite Esterline's best efforts to obscure this fact by focusing on the purported importance of "dotted line" reporting. Earl Cornish was in part responsible for the alleged discrimination against Mr. Smith. (Doc. 28, p. 5). Therefore, Mr. Smith and Mr. Peek reported to the same decision maker that terminated Mr. Smith but did not terminate Mr. Peek. Mr. Peek and Mr. Smith appear to have performed different roles in the organization. Mr. Smith admits that he and Mr. Peek had different job duties and positions. (Doc. 21-1, p. 39 (190:2-6)). ("His task is crunching numbers. That is not my task. My task is to get information from him."). They were also in different departments. (*Id.*, p. 13 (44:14-21)).

A significant mitigating circumstance that distinguishes Mr. Smith and Mr. Peek was the ongoing nature of Mr. Smith's performance issues. Mr. Smith contends that it was "not a failure of performance that cost the Plaintiff his employment, but it was an effort to make him appear as if he has poor performance." (Doc. 28, p. 11). This statement, and others like it in Mr. Smith's

8

brief, are void of any citation to evidence to support this contention. To the contrary, Mr. Smith's deposition shows that he was aware of the documentation of his ongoing performance issues, and he was aware that he had been given a final warning:

> Q. And did you understand there were issues with your performance that needed to be corrected in September of '13?
> A. Oh, it was very apparent if I had a Final Warning PIP, yeah. I mean, it was very clear to me that there were, this Final Warning said that there was something that I wasn't doing that if I continued to do it I wouldn't be there.

(Doc. 21-1, p. 27 (104:12-19)). While there is documentation of Mr. Smith's ongoing performance issues, there is no indication that Mr. Peek had a pattern of performance issues. The extent of performance issues is an important factor in determining whether a comparator is similarly situated. *See Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1044 (8th Cir. 2007). Given that the search for a comparator requires the identification of someone without any mitigating or distinguishing circumstances, assuming for a moment that Mr. Peek even had made the same mistake as Mr. Smith, Mr. Smith's ongoing performance issues and receipt of a final warning present mitigating and distinguishing circumstances. Even though Mr. Smith and Mr. Peek both reported to the same person, the difference in scope of the mistake that was made and the distinguishing circumstances of Mr. Smith's repeated performance issues show that Mr. Peek is not a comparator that Mr. Smith can use to create an inference of discrimination in this lawsuit.

  2. **Steve Albertson as a Comparator**

Mr. Smith suggests that Steve Albertson is a comparator because he is a white employee who made a similar error but was not fired. (Doc. 28, p. 4). The error alleged to have been made by Mr. Albertson could possibly be as serious (*Id.*), and although Esterline downplays the seriousness of the error by presenting contrary evidence (Doc. 31, p. 9; Doc. 32), the Court need not weigh that evidence to decide whether Mr. Albertson's error is as severe as Mr. Simth's error

in order to conclude that Mr. Albertson cannot be a comparator. Other than stating that Mr. Albertson is white and describing the mistake that Mr. Albertson made for which he was not fired, Mr. Smith has not made any showing that Mr. Albertson is similarly situated. (*Id.*). Given that a plaintiff bears the burden to demonstrate that a comparator is similarly situated, and given that this means showing that the comparator dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without mitigating or distinguishing circumstances, Mr. Smith has failed to meet his burden to show that Mr. Albertson is a comparator.

As was the problem with Mr. Peek described above, while there is documentation of Mr. Smith's ongoing performance issues, there is no indication that Mr. Albertson had a pattern of performance issues. Mr. Smith has not shown that Mr. Albertson was also on a final warning improvement plan like Mr. Smith. Given that the search for a comparator requires the identification of someone without any mitigating or distinguishing circumstances, assuming for a moment that Mr. Albertson even had made the same mistake as Mr. Smith, Mr. Smith's ongoing performance issues and receipt of a final warning present mitigating and distinguishing circumstances. For these reasons, Mr. Albertson cannot be used as a comparator by Mr. Smith in this lawsuit.

Because Mr. Smith has not shown that either of his purported comparators are similarly situated, he therefore cannot present evidence on the theory that a similarly situated white person was treated differently, thus creating an inference of unlawful discrimination using circumstantial evidence. *Fields*, 520 F.3d at 864 (showing that comparators are similarly situated is "rigorous and requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing [himself] to the other employees.").

### 3. Whether Mr. Smith was Meeting Esterline's Legitimate Job Expectations

The second requirement for making out a prima facie case of discrimination, whether Mr. Smith was meeting Esterline's legitimate job expectations, is disputed by the parties. As such, summary judgment might not be appropriate on this ground. However, the Court declines to further examine this requirement as the lack of a comparator as described above presents a sufficient basis to conclude that Mr. Smith has not made out a prima facie case.

### C. Esterline's Legitimate Nondiscriminatory Reason

Even assuming that Mr. Smith was able to make out a prima facie case for discrimination based on race, Esterline has articulated a legitimate nondiscriminatory reason for terminating his employment. This articulation rebuts the prima facie presumption. *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 259 (8th Cir. 1996). Esterline argues that Mr. Smith was terminated because,

> he had continued performance problems (including missing important contract proposal deadlines, significantly misquoting a price to a customer, and sending an email to a client containing private company information, in addition to other emails with grammar, spelling and syntax errors) and missed a very significant deadline after receiving a final warning.

(Doc. 19, pp. 22-23). Esterline argues—and adequately supports its argument—that because Mr. Smith missed the final deadline, Esterline missed out on a $1.8 million contract. (Doc. 19, p. 13; Doc. 21-1, p. 29 (140:2-7); Doc. 32, ¶ 2; Doc. 32-1). Poor job performance is a legitimate, nondiscriminatory reason for termination. *Richmond v. Bd. of Regents of Univ. of Minnesota*, 957 F.2d 595 (8th Cir. 1992). Mr. Smith's repeated performance issues, coupled with the fact that his error resulted in missing out on a $1.8 million contract, appears to be a legitimate nondiscriminatory, assuming that Mr. Smith was able to make out a prima facie case.

### D. Esterline's Proffered Reason is not Pretext for Unlawful Discrimination

Esterline has articulated a legitimate nondiscriminatory reason for its decision to terminate Mr. Smith's employment as discussed above, and Mr. Smith has not shown that Esterline's proffered reason is pretext for unlawful discrimination. "[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee." *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005) (citing *Kohrt v. MidAm. Energy Co.,* 364 F.3d 894, 898 (8th Cir. 2004)). A plaintiff also must show that "the circumstances permit a reasonable inference to be drawn that the real reason [the defendant] terminated him was because of his race." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 146–47 (2000)); *Spencer v. Stuart Hall Co.,* 173 F.3d 1124, 1128 (8th Cir. 1999.

Mr. Smith addresses the issue of pretext in two parts of his brief. First, at the outset of the argument section, he poses a list of fifteen questions and one statement, which appear to be identical to the fifteen questions and one statement submitted to the Court as Plaintiff's Statement of the Material Facts. (Doc. 29). One of those questions posed is "[w]hether Esterline's proffered reason for the Plaintiff's termination was pretextual?" (Doc. 28, p. 8). This merely raises the issue of pretext, but does not present any argument on the point so it is not helpful. Later in the brief, Mr. Smith states:

> there were other issues that indicate that it was not a failure of performance that cost the Plaintiff his employment, but it was an effort to make him appear as if he had poor performance. For instance, the contract that is complained about by Esterline in which they contend that the Plaintiff was late in submitting a bid was actually submitted timely. The deposition of Milton P. Smith reveals that there was much confusion concerning the submission of the bid...

(*Id.*, p. 11). The Court has already discussed the issue of the timeliness of the bid submission in the background section above, and as such the Court considers the bid submission to be tardy.

12

In light of this late bid, Mr. Smith raises three arguments that he claims show that Esterline's proffered reason is pretext for unlawful discrimination. First, he claims that the "bid actually had to go from Arkansas to California and back." (*Id.*). While it is true that Arkansas and California are in different time zones and are not neighbors, these geographical realities were fully known to Mr. Smith when he undertook the project of gathering information and submitting a bid. Second, Mr. Smith claims that "there was a question of whether the bid could legally be made and approved on a holiday." (*Id.*). While Mr. Smith did say that he spoke with a representative from the Department of the Air Force about the fact that the due date was on a holiday, Mr. Smith then went on to say, "I assured her that we would be submitted [sic] a bid on the due date." (Doc. 27-3). Regardless of whether the due date was on a holiday, Mr. Smith's own statement shows that he knew when the deadline was, and that he had the intention to submit a proposal on behalf of Esterline by the deadline.

Finally, Mr. Smith argues that the Esterline legal department "did not challenge the issues of contracts on a holiday, nor the fact that under Pacific Time, it was a bid that was timely made." (Doc. 28, pp. 11-12). Given that Mr. Smith has asserted that he "had to submit the bid by 4:00 p.m. Mountain Daylight Time," it is completely irrelevant that a bid submitted at 4:11 p.m. Mountain Daylight Time would have been considered timely in Pacific Time, or for that matter any other time zone west of Mountain Daylight Time. And with regard to the legal department not challenging the fact that a clearly-communicated deadline happened to fall on a federal holiday, absent any citation, the Court cannot see how this fact violates any policy of the Air Force or any tenant of contract law to form the basis of a legal challenge. Esterline's legal department's decision not to initiate a frivolous legal challenge against the Air Force in no way demonstrates that Esterline's justification for Mr. Smith's termination is pretext.

The three reasons asserted by Mr. Smith do not show a genuine dispute over whether Esterline's proffered reason for firing Mr. Smith—his late submission of the bid—was pretext for unlawful discrimination based on race. Because Mr. Smith must do more than merely discredit Esterline's asserted reason, as stated in *AT & T Corp.*, and because his three asserted theories do not rise to the level of discrediting Esterline's reason, Mr. Smith can not survive summary judgment. 422 F.3d at 763. Moreover, upon reviewing the three theories argued by Mr. Smith, the circumstances do not permit a reasonable inference to be drawn that Esterline terminated Mr. Smith because of his race. *See id.* Thus, even if Mr. Smith were able to make a prima facie showing, he has been unable to show that Esterline's proffered reason is pretext for unlawful discrimination.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant Armtec Countermeasures Company's motion for summary judgment (Doc. 18) is GRANTED and Plaintiff Milton Paul Smith, III's claims are DISMISSED WITH PREJUDICE. Judgment will be entered in favor of Armtec Countermeasures Company d/b/a Esterline Defense Technologies

IT IS SO ORDERED this 10th day of November, 2016.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE